1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11    JOHN HEALY,
                                          NO. CIV. S-02-1575 LKK/DAD
12           Plaintiff,

13       v.                                    O R D E R

14    MCI WORLDCOM NETWORK
      SERVICE, INC., a Delaware,
15    corporation; ELECTRONIC
      DATA SYSTEMS CORPORATION,
16    a foreign corporation; and
      EDS/SHL CORPORATION, a Delaware
17    corporation,

18           Defendants.
      _____/
19

20       Plaintiff John Healy's suit included claims for breach of

21    contract, fraud, and intentional infliction of emotional

22    distress.  In due course, the parties moved for cross-summary

23    judgment.  On August 2, 2005, the court granted in part, and

24    denied in part, plaintiff's motion for summary judgment as to

25    the breach of contract claim and denied all other motions.  The

26    matter proceeded to trial on November 8, 2005.  Pursuant to the

                                     1

1   court's Findings of Fact and Conclusions of law filed on January

2   6, 2006, judgment in the amount of $3,024,988.48 was rendered in

3   favor of plaintiff.  Plaintiff now moves for attorney's fees and

4   litigation costs against defendants under California Civil Code

5   § 1717.

6        Where, as here, the suit was based on California

7   substantive law, an award of attorneys' fees incurred in the

8   suit is governed by state law.  See Kona Enters., Inc. v. Estate

9   of Bishop, 229 F.3d 877, 883 (9th Cir. 2000).  Under California

10  law, a prevailing party is ordinarily not entitled to attorneys'

11  fees unless the parties have previously agreed to the fees, or

12  the fees are otherwise provided by statute.  See Lerner v. Ward,

13  13 Cal.App.4th 155 (1993) (citing, inter alia, Reynolds Metals

14  Co. v. Alperson, 25 Cal.3d 124 (1979)).  Defendants do not

15  dispute that plaintiff prevailed in this litigation and is

16  entitled to an award of attorneys' fees.[1]  Defendants, however,

17  challenge plaintiff's calculation of the attorney's fees and

18  costs on various grounds.  I address the motion based on the

19  pleadings and the parties' papers.

20  ////

21  _____

22       [1]  California Civil Code § 1717(a) provides that parties to
    a contract may agree to reasonable attorney's fees, in addition to
23  other costs, regardless whether he or she is the party specified
    in the contract.

24       Section 2.5 of the Separation Agreement at issue in the
    instant case provides that "[a]ny breach of the terms of this
25  agreement by Employee . . . shall entitle MCI to recover the
    consideration as set forth above, along with reasonable attorneys'
26  fees incurred by MCI to defend any such action to the extent
    permitted by law."

2

1  **A.  METHOD OF CALCULATION**

2      Defendants challenge the various theories upon which

3  plaintiff seeks attorney's fees, arguing that such theories

4  disregard the "lodestar method."  Opp'n at 6.  Defendants' point

5  is well-taken.

6      Indeed, plaintiff offers the court three scenarios for

7  calculating attorney's fees, two of which completely ignore

8  established law.  In Scenario A, plaintiff suggests that the

9  court should add 33.3% of the judgment (the contingency rate

10 plaintiff and his counsel agreed to) to the total judgment and

11 provide plaintiff's counsel with one-third of that amount.  In

12 Scenario B, plaintiff suggests that a straight contingency rate

13 of 33.3% should be applied to calculate the attorneys' fees,

14 giving counsel 1/3 of the total judgment.[2]  Plaintiff argues

15 that the purpose of attorneys' fees is "to make the prevailing

16 party whole" (internal quotations omitted).  The court rejects

17 both methods for calculating attorneys' fees because they are

18 inconsistent with governing law.  Both federal and California

19 courts have adopted the "lodestar" method for calculating

20 attorney's fees.  Hensley v. Eckerhart, 461 U.S. 424, 433

21 (1983); Serrano v. Priest, 20 Cal. 3d 25, 48-49 (1977).  To

22 determine the appropriate fee amount, the court multiplies the

23

24      [2]  Plaintiff's counsel explains that there existed a
contingency fee arrangement under which he would receive 33.3% of
25 the recovery.  Under Scenario A, plaintiff requests
$1,512,494.24, whereas under Scenario B, plaintiff requests
26 $1,068,207.20 in attorney's fees.

3

1  number of hours reasonably expended in the litigation by a

2  reasonable hourly rate.  Id.

3  **B.   REASONABLE HOURLY RATE**

4      The appropriate hourly fee should be based on the rates

5  charged by counsel with similar experience, reputation, and

6  skill for similar cases in the legal community.  White v. City

7  of Richmond, 713 F.2d 458 (9th Cir. 1983).  The burden is on the

8  fee applicant to produce satisfactory evidence that the

9  requested rates are in line with those in the prevailing

10 community for similar services by lawyers of comparable skill,

11 experience, and reputation.  Blum v. Stenson, 465 U.S. 886, 895

12 (1984).  Plaintiff's counsel seeks $450.00 per hour for services

13 rendered by Richard Edson("Edson") and $350.00 per hour for Ross

14 Nott ("Nott").  For the reasons stated below, the court

15 concludes that $325.00 per hour is the appropriate rate for

16 Edson's services and $225.00 is the proper hourly fee for Nott.

17     Edson has thirty years of experience and supports his

18 requested hourly fee with his own declaration where he explains

19 that he "talk[ed] to business litigation attorneys in the

20 Sacramento area," and was told that "they charge anywhere from

21 $350.00 to $525.00 per hour."  Edson then chooses $450.00 as

22 "being approximately in the mid-range."  Edson Dec. at 1-2. Nott

23 has practiced law for eleven years and bases his requested

24 hourly fee of $350.00 per hour on two factors, the average

25 hourly rate of contingency cases he has worked on, and the

26 amount awarded plaintiff's counsel in Velazquez v. Khan, CV-S-

4

1    01-0246 (E.D. Cal.)(England, J.)(awarding plaintiff's counsel

2    $300.00 with eight years of experience).

3        Defendants challenge the reasonableness of Edson's hourly

4    rate by arguing that lead counsel for defendant, Lee J. Hutton,

5    who also has thirty years of experience, only charged $250.00

6    per hour in the instant matter.  Hutton Dec. at 1-2.  The court

7    cannot consider Hutton's hourly rate because he is employed in

8    Ohio and such evidence does not constitute rates which are "in

9    line with those prevailing in the [Sacramento] community for

10   similar services by lawyers of reasonably comparable skill,

11   experience, and reputation."  Blum, 465 U.S. at 895 n. 11

12   (1984).  Defendants, however, also attach the declarations of

13   Jay-Allen Eisen ("Eisen") and James F. Curran ("Curran"), two

14   attorneys employed in Sacramento which evidence that the

15   prevailing hourly rates for similar work performed by attorneys

16   of comparable skill, experience and reputation.[3]  Eisen declares

17   that he believes prevailing rates for attorneys in Sacramento

18   are between $300 and $350, Eisen Dec. at 4, while Curran opines

19   that lawyers in Sacramento with 20-35 years of experience charge

20   no more than $350 per hour for their services.  Curran Dec. at

21   2.  Curran concludes that "the 'market' rate for an 11-year

22

23       [3]  Eisen was admitted to practice law in California in 1969
     and has been practicing law in Sacramento for over twenty years,
24   first with the law firm of Karlton, Blease and Vanderlaan, and
     later with Rothschild & Eisen.  In 1982, Eisen established his
25   present practice in Sacramento.  Curran has been practicing law in
     California since 1989 and has practiced law in Sacramento since
26   1992 with four different law firms.

1   veteran like Mr. Nott in Sacramento is approximately $125-175

2   per hour." _Id_. at 4.

3       Because plaintiff's counsel has failed to present

4   sufficient evidence of the appropriate fee for Edson (indeed,

5   his evidence amounts to unsubstantiated hearsay), the court

6   determines that the rate of $325.00 per hour adequately reflects

7   the prevailing hourly rate for comparable attorneys with Edson's

8   experience, reputation, and skill.  After considering Nott's

9   legal experience and the parties' evidence, the court determines

10  that $225.00 per hour adequately reflects the prevailing hourly

11  rate for attorneys of comparable skill, experience, and

12  reputation.  _Cf._ _Asberry v. City of Sacramento_, CIV. S-01-2343

13  at (E.D. Cal. Apr. 2004)(Karlton, J.)(Order at 2-4)(awarding

14  attorney with fifteen years of experience in Sacramento $275-

15  $325 per hour).

16  **C.  NUMBER OF HOURS BILLED**

17      Plaintiff seeks to recover 1,165.10 hours of attorneys'

18  fees for Edson and 173.5 hours for Nott expended in this

19  litigation.  Edson Dec. at 2; Nott Dec. at 8.  In arriving at

20  the lodestar figure, the district court should exclude hours

21  that are "excessive, redundant, or otherwise unnecessary

22  . . . ."  _Hensley_, 461 U.S. at 434.  Defendants object to the

23  number of hours billed for various reasons, which the court

24  addresses below.

25  ////

26  ////

6

1            **1.   <u>Hours Spent on Fraud Claim</u>**

2         Defendants contend that the court should reduce plaintiff's

3 hours by twenty-three percent to reflect time spent on fraud-

4 related claims.  According to defendants, attorney's fees are

5 allowed in this matter only for the time spent on prosecuting

6 the breach of contract actions and not on non-contractual

7 claims.  Opp'n at 18.  Defendants claim that two of the

8 witnesses at trial, Dorothy Culham and Barbara Iman, testified

9 almost entirely on fraud issues and estimates that "one-half of

10 the time, energy and attention in this litigation" pertained to

11 plaintiff's fraud cause of action.  <u>Id</u>. at 17.  I cannot agree

12 that the court must reduce hours plaintiff's counsel spent on

13 the fraud claims.

14         Attorney's fees "need not be apportioned when incurred for

15 representation on an issue common to both a cause of action in

16 which fees are proper and one in which they are not allowed."

17 <u>Reynolds Metals Co. v. Alperson</u>, 25 Cal.3d 124, 129-130 (1979);

18 <u>see also</u> <u>Abdallah v. United Sav. Bank</u>, 43 Cal.App.4th 1101, 1113

19 (1996)(apportionment not required where claims are "inextricably

20 interwined, making it impracticable, if not impossible, to

21 separate the multitude of conjoined activities into compensable

22 or noncompensable time units").  Such decisions are within the

23 discretion of the court.  <u>Hubbard v. Twin Oaks Health and</u>

24 <u>Rehabilitation Center</u>, 406 F.Supp.2d 1096, 1100 (E.D. Cal.

25 2005)(Karlton, J.).

26 ////

1    It would be impracticable for the court to apportion the

2   fees because the two misrepresentations at issue made by Culham

3   and Iman formed part of the basis for the breach of contract

4   claim.  In the instant case, the court finds it inappropriate to

5   apportion attorneys' fees because all of plaintiff's causes of

6   actions were grounded on the same common set of facts, and thus,

7   the claims were "inextricably intertwined."  See January 6, 2006

8   Findings of Fact & Conclusions of Law at 6-11.

9        **2.  <u>Hours Reasonably Spent</u>**

10   Defendants contend that Edson's hours are not reasonably

11   spent because they are excessive or duplicative and requests

12   that the court adjusts Edson's hours accordingly.   Defendants

13   point to various examples in which they believe Edson "liberally

14   recorded" time spent on legal tasks.  The court has carefully

15   examined Edson's twenty-six page billing statement and agrees

16   with defendants that some of Edson's hours are excessive and not

17   reasonably spent.  For example, on February 12, 2004, Edson

18   allegedly spent 3.6 hours on reviewing correspondence from

19   opposing counsel on the joint status report, a task that the

20   court believes should have taken no longer than thirty minutes.

21   On August 21, 2005, Edson allegedly spent 5.5 hours on reviewing

22   defendants' pretrial conference statement, a task that the court

23   estimates should have taken no longer than thirty minutes.

24   Edson also claims that he spent one hour and twenty-four minutes

25   on February 17 and 26, 2004 reviewing the pro hac vice

26   applications submitted by defendant, a task that the court

believes should take no more than fifteen minutes.  Such
examples lead the court to believe that counsel's time
calculation is inflated and unreasonable.  Rather than expend
judicial resources and list every time entry which the court
believes is excessive, of which there appear to be many, the
court reduces the hours Edson claims he spent by fifteen
percent, or 174.77 hours, leaving Edson's total hours for
services rendered at 990.33 hours.  The court has reviewed
Nott's records, and because they appear reasonable and because
defendants do not specifically challenge his hours, the court
shall utilize the 173.5 hours sought by Nott for the lodestar
calculation.

**D.   OTHER REQUESTED DEDUCTIONS**

Defendants argue that plaintiff is not entitled to
$69,961.00 in fees that he seeks for the services of Anne Marie
Flaherty because "he has not borne his burden of proof in
establishing the number of hours she worked, the reasonableness
of those hours, the amounts charged per hour and the
reasonableness of the hourly rate." Opp'n at 13.  The court
agrees with defendants' contention.

Plaintiff has submitted a declaration stating that he paid
Flaherty $69,961.00 for legal services between May 6, 2002 and
January 21, 2003.  Healy Dec. at 1.  However, the fee applicant
bears the burden of submitting "evidence supporting the hours
worked and rates claimed." Hensley, 461 U.S. at 433.  Plaintiff
fails to tender evidence indicating the number of hours Ms.

9

1  Flaherty worked, the rate at which she charged plaintiff, or

2  what legal tasks she completed on behalf of plaintiff.  Where,

3  as here, plaintiff has provided no supporting documentation for

4  his claim, the court must deny his request as to Flaherty's fees

5  due to lack of evidentiary support.  See City of Oakland v.

6  McCullough, 46 Cal.App.4th 1, 10 (1996)(denying portion of fee

7  request due to lack of evidentiary support).

8       EDS also argues that it is entitled to a set off for

9  attorneys' fees it alleges plaintiff has already received from

10  MCI.  According to defendant, after MCI WorldCom filed for

11  bankruptcy, the claims against it were dismissed, but plaintiff

12  reasserted those claims against MCI WorldCom in Bankruptcy

13  Court.  Opp'n at 18.  Plaintiff was allegedly paid by MCI

14  WorldCom before trial in the amount of $49,492.80 as

15  compensation for attorneys' fees incurred in connection with his

16  severance pay claim.  Id. at 19.  Defendant asserts that unless

17  it receives a credit for attorneys' fees already received,

18  plaintiff stands to receive a double recovery.  The record does

19  not support defendant's claim.  Defendant fails to submit any

20  evidence that plaintiff has received this amount, and whether

21  the amount constitutes attorneys' fees for the same claims

22  raised in this litigation.[4]  For the reasons stated above, the

23  court will not set off the attorneys' fees allegedly paid by MCI

24

25       [4]  It would appear that any fees received would be for
bankruptcy litigation, a claim quite difference than the matter-at-
26  bar.

10

1  WorldCom in the bankruptcy proceedings.

2  **E.  MULTIPLIER**

3      After determining a reasonable fee award and the number of
4  hours the prevailing attorneys reasonably expended on the
5  litigation, courts may then adjust the lodestar to reflect other
6  particular aspects of a case.  See <u>Kerr v. Screen Extra  Guild</u>,
7  <u>Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975); <u>Serrano v. Priest</u>, 20
8  Cal.3d 25 (1977).  When deciding whether to adjust the lodestar,
9  courts often use the following twelve factors: (1) time and
10  labor required, (2) the novelty and difficulty of the issues
11  involved, (3) the skill requisite to perform the legal service
12  properly, (4) the preclusion of other employment by the attorney
13  due to acceptance of the case, (5) the customary fee, (6)
14  whether the fee is fixed or contingent, (7) time limitations
15  imposed by the client or the circumstances, (8) the amount
16  involved and the results obtained, (9) the experience,
17  reputation, and ability of the attorneys, (10) the
18  "undesirability" of the case, (11) the nature and length of the
19  professional relationship with the client, and (12) awards in
20  similar cases.  <u>Kerr</u>, 556 F.2d at 69-70.

21      To the extent that a party seeks an enhancement, it bears
22  the burden of proof.  See <u>Ketchen v. Moses</u>, 24 Cal.4th 1122
23  (2001).  Nothing requires a trial court to include a fee
24  enhancement to the basic lodestar figure for contingent risk,
25  exceptional skill, or any other factor.  <u>Id</u>.  Courts retain the
26  discretion to do so in the appropriate case.  <u>Id</u>.  Notably, the

1  Supreme Court has held that there is a "strong presumption" that

2  the lodestar figure represents a reasonable fee.  <u>Pennsylvania</u>

3  <u>v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S.

4  546, 565 (1986).  Plaintiff seeks a multiplier of two, arguing

5  that a multiplier is warranted because he claims the case is

6  "surprisingly complex" and because plaintiff's counsel "accepted

7  the matter on a contingent basis."  Mot. at 8.  While the court

8  acknowledges the difficulty of the case, given the facts, the

9  court concludes that a multiplier is not justified.

10  **F.   BILL OF COSTS**

11      Plaintiff also requests $13,727.89 for items listed in a

12  bill of costs submitted to the court.  Defendants rightly note

13  that plaintiff seeks thousands of dollars in expenses that are

14  simply not taxable pursuant to 28 U.S.C. § 1920.  Defs.' Obj. at

15  2.  At the outset, the court notes that it has spent an

16  unreasonable amount of time deciphering plaintiff's bill of

17  costs.  The court was also required to call plaintiff to submit

18  receipts and evidence of such costs because plaintiff's bill of

19  costs was initially submitted to the court without any

20  supporting evidence.  Nevertheless, the court will do its best

21  to decide which costs are proper and which are not.  Defendants

22  have submitted a lengthy list of objections to plaintiff's bill

23  of costs.  The court will turn only to those objections that

24  warrant attention.

25  ////

26  ////

1       **1.  <u>Duplicate Copies of Deposition Transcripts</u>**

2     Defendants object to plaintiff recovering $142.85 for a

3 copy of Barbara Iman's deposition even though he had received

4 the original and one copy at a cost of $530.  The court agrees

5 with defendant that this transcript was unnecessary and will

6 subtract $142.85 from the bill of costs.

7       **2.  <u>Subsistence Cost for Barbara Iman</u>**

8     Plaintiff seeks $695.40 in subsistence costs for Iman.  As

9 defendants point out, however, it appears plaintiff was overly

10 sloppy in his compilation of the bill of costs.  The only

11 receipts plaintiff submits for $685.40 were for plaintiff's

12 counsel's travel expenses to take Ms. Iman's deposition.  These

13 travel expenses cannot be considered witness fees as

14 contemplated by 28 U.S.C. §§ 1820 and 1821.  The court will

15 subtract $695.40 from the bill of costs.

16     **3.  <u>Copying Costs</u>**

17     Defendants object to $3,651.60 of the $4,084.11 plaintiff

18 seeks in copying costs.  Defendant objects to the $211.08 that

19 plaintiff seeks in copying costs for his appellate brief in the

20 interlocutory appeal on the motion to remand that EDS filed and

21 won.  The court agrees with defendant on this ground and $211.08

22 will be deducted from the bill of costs.  EDS also objects to

23 the $3,298.10 that plaintiff seeks for copying his trial

24 exhibits because defendant argues that plaintiff was forced to

25 "redo" his exhibits twice at the order of this court.  The court

26 agrees that defendant should not be saddled with costs

1   associated with exhibits which were improperly presented to the

2   court.  The court also agrees with defendant that it is unclear

3   what exactly the cost of the final set of exhibits should be

4   because plaintiff has failed to set forth the costs for the

5   final set.  Because the court is unable to tell what it cost

6   plaintiff to prepare the final set of exhibits, the court will

7   therefore subtract two-thirds of the requested copying amount,

8   or $2,198.73, from the bill of costs, representing plaintiff's

9   two unsuccessful attempts at providing exhibits to the court.

10       **4.**  **Other Costs**

11       Defendant objects to $3,522.28 representing counsel's

12   travel expenses and "courier charges."  See Plaintiff's Amended

13   Bill of Costs at 10-22, 30, 35, 37-38, 46-47, 49-50, 56-58, 66-

14   69.  Although the court agrees with defendant that such travel

15   expenses are not taxable and do not constitute "costs" as

16   contemplated under 28 U.S.C. § 1920, these costs are properly

17   recovered as part of an attorneys' fees motion.  See Yasui v.

18   Maui Elec. Co., Ltd., 78 F.Supp.2d 1124, 1130 (D.Haw. 1999).

19   The court therefore awards $3,522.28 to plaintiff as part of his

20   attorneys' fees motion.

21   ////

22   ////

23   ////

24   ////

25   ////

26   ////

1                              **CONCLUSION**

2        Accordingly, plaintiff's counsel is AWARDED attorneys' fees

3   and costs in the amount of $371,660.33.[5]

4        The court is also in receipt of defendants' application for

5   approval of supersedeas bond.  The application is APPROVED and

6   the matter is automatically STAYED pursuant to Fed. R. Civ. P.

7   62(d).

8        IT IS SO ORDERED.

9        DATED:  March 1, 2006.

10
                              /s/Lawrence K. Karlton
11                            LAWRENCE K. KARLTON
                              SENIOR JUDGE
12                            UNITED STATES DISTRICT COURT

13

14

15   ─────────────────

16        [5]  The total amount is derived from adding the attorneys' fees
     to the bill of costs as follows:

17   **Attorneys' Fees**
     **Hours**                    **Rate**            **Total**
18   Edson (990.33)               $325            $       321,857.25
     Nott (174.77)                $225            $        39,323.25
19   Travel Expenses                           +  $         3,522.28
                                                   (inappropriately
20                                                 categorized as costs)

21                                              $       364,702.78
     **Bill of Costs**
22   **Amount Requested**                        $        13,727.89
     **Deductions**
23   Duplicate Iman deposition                             142.85
     Iman subsistence cost                                 695.40
24   Copy of appellate brief                               211.08
     Exhibit copying cost                                2,198.73
25   Travel & service costs                              3,522.28

26                                              $         6,957.55

                                 15